**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenya Lou Rogers,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-23-00003-PHX-MTL<br><br>**ORDER** |

Plaintiff Kenya Lou Rogers ("Plaintiff") challenges the denial of her application for disability insurance benefits by Defendant Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with the Court seeking review of her claim. The Court has reviewed the briefs (Docs. 15, 16, 17) and the Administrative Record (Doc. 8, "A.R."), and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.  BACKGROUND**

Plaintiff filed an application for disability insurance benefits under Title II on January 9, 2014, for a period of disability beginning on February 1, 2011. (A.R. at 72.) Plaintiff's claim was initially denied on February 28, 2014 (*id.* at 82), and upon reconsideration on December 20, 2014 (*id.* at 93-107). Thereafter, Plaintiff filed a request for a hearing, which was held on July 27, 2016. (*Id.* at 39-70.) At the hearing, Plaintiff amended her period of disability to beginning February 1, 2012. (A.R. at 69-70). The ALJ denied Plaintiff's application on October 20, 2014. (*Id.* at 20-32.) The Appeals

Council denied Plaintiff's request for review on November 24, 2017. (*Id.* at 1-6). Plaintiff appealed the decision with the district court pursuant to 42 U.S.C. § 405(g), and on December 28, 2018, the court remanded the case back to the ALJ to issue a new decision that included: (1) "a review of all the opinion evidence and limitations described by the treating and evaluating physicians"; (2) "a review of [Plaintiff's] impairments and symptoms"; (3) "a determination of [Plaintiff's] residual functional capacity"; and (4) "a determination of the remaining steps in the sequential process using, if necessary, the testimony from a vocational expert." (*Id.* at 1108-09.)

While Plaintiff's original application was under review by the district court, Plaintiff also filed a subsequent claim for Title II disability insurance benefits on March 2, 2018. (*Id.* at 1070.) On remand, the ALJ consolidated the two claims and denied Plaintiff's application on March 17, 2020 (*id.* at 972-1000, 1130.), and the Appeals Counsel denied Plaintiff's request for review on November 3, 2022 (*id.* at 952-55). Plaintiff now seeks judicial review with this Court pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the record and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: fibromyalgia, cervical degenerative disc disease, cervical spondylosis, hypothyroidism, status post laparoscopic lysis of adhesions, anxiety disorder, depression disorder, and history of migraine headaches. (*Id.* at 979-80.)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 980.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC").[1] The ALJ found:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the [RFC] to perform light work as defined in 20

---

[1] Residual functional capacity refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

> CFR [§] 404.1567(b) except that she can frequently climb and stoop. She is able to perform simple, routine and repetitive tasks involving simple work related decisions and simple instructions. She can perform work with no public contact. In addition, she can perform work with no exposure to loud noise.

(*Id.* at 983.) Based on this RFC, the ALJ found Plaintiff could not perform past relevant work, but could perform other jobs existing in significant numbers in the economy, such as marker, routing clerk, and router. (*Id.* at 999-1000.) Ultimately, the ALJ concluded that Plaintiff was not disabled under §§ 261(i) and 223(d) of the Social Security Act. (*Id.*)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis*, 236 F.3d at 517 n.13. The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. —, 139 S. Ct. 1148, 1157 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094,

1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520 (a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv), (e). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (f). If not, the claimant is disabled. *Id.*

### III. DISCUSSION

Plaintiff raises two issues before the Court. First, Plaintiff argues that the ALJ erred by "rejecting the work-preclusive assessments from treating neurologist Farrukh Qureshi, M.D., treating mental health nurse practitioner Chitra Mathew, D.N.P., and state agency examining psychologist Jonna Krabbenhoft, Psy.D., in the absence of specific and legitimate reasons based on substantial evidence in this record as a whole." (Doc. 15 at 1.) Second, Plaintiff argues that the ALJ erred by "rejecting [Plaintiff's] symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in this record as a whole." (*Id.*)

#### A. Medical Opinions

While "[t]he ALJ must consider all medical opinion evidence," for claims filed before March 27, 2017, such as this one, the ALJ must consider the hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008);

- 4 -

*see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* Treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *see also Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830-31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 1. Dr. Farrukh Qureshi

Since 2015, Plaintiff has seen Dr. Qureshi, a neurologist, for treatment of her ailments including headaches and migraines. (A.R. 851-52.) In May 2016, Dr. Qureshi provided a medical opinion that Plaintiff's headaches and migraines would preclude her from working an 8-hour day "on [an] intermittent basis." (*Id.* at 882.) His assessment indicated that Plaintiff experiences each month about seven to eight headaches that last at least two hours. (*Id.*) Dr. Qureshi stated that Plaintiff's headaches moderately affect her concentration and ability to remain on task. (*Id.*) He estimated that Plaintiff would miss more than five days of work a month due to her headaches. (*Id.* at 883.) According to the form, he did not consult his own treatment or other records. (*Id.*) But the limitations he

- 5 -

noted are from "objective, clinical, or diagnostic findings" that have been documented by either him or elsewhere in the medical records. (*Id.*) Later, in September 2019, Dr. Qureshi completed another medical assessment form and provided the same conclusions but added that Plaintiff received nerve block injections to treat her headaches and that he did consult other records to reach his conclusions. (*See id.* at 2059-60.)

The ALJ assigned "little weight to the opinions provided by Dr. Qureshi." (*Id.* at 995.) The ALJ found that Dr. Qureshi's opinions "were not consistent with available evidence of record and unpersuasive." (*Id.*) The ALJ reasoned that the frequency of headaches were unsupported by his treatment records. (*Id.*) Specifically, the records showed only a few months in 2016 that supported his reported frequency and duration of Plaintiff's headaches. (*Id.*) After treatment with medications and nerve block injections in 2016, Plaintiff "experienced headaches at a frequency of two or three times per month on prescribed treatment." (*Id.*) The ALJ also reasoned that Dr. Qureshi stated that he did not review other providers' treatment records, so he based his opinion on his treatment of Plaintiff, "which began more than three years after the alleged onset date." (*Id.* at 995-96.)

Plaintiff argues that the ALJ's assessment of Dr. Qureshi's medical opinion fails to rise to level of specific and legitimate reasons because "periods of temporary reprieve" do not mean Plaintiff's condition is resolved. (Doc. 15 at 13.) Plaintiff argues that periods of improvement should be viewed in context of the whole record, stating that an ALJ must examine evidence in the broader context of the claimant's impairment. (*Id.* (citing *Attmore v. Colvin*, 827 F.3d 872, 877-78 (9th Cir. 2016) (holding that temporary improvement in bipolar disorder symptoms does not warrant a finding of medical improvement)).)

Here, the ALJ provided specific and legitimate reasons for discounting Dr. Qureshi opinion. As the ALJ explained, treatment notes from April 2016 to September 2016 indicate that Plaintiff experienced an increase in the frequency of headaches from two to three per month to about seven to eight per month. (*Id.* at 993, 995, 1627-34.) The

ALJ, however, considered Dr. Qureshi's treatment notes from January 2017, which indicate that Plaintiff's headaches were reduced to fewer than three a month after nerve block treatment and taking the medication Maxalt. (*Id.* at 991, 1590-1627.) In fact, by March 2017, the ALJ found that Dr. Qureshi noted Plaintiff's "migraine attacks were completely under control." (*Id.* at 993, 1617.)

The ALJ's determination assessed the treatment in the broader context. As the ALJ identified, treatment records from September 2012, March 2013, and May 2013 indicate that medication resolved Plaintiff's headaches. (*Id.* at 686, 688, 697, 986-88.) Also, as the ALJ noted, Plaintiff's other medical records show that "complications with interactions of prescribed medications or side effects" were alleviated when providers switched or modified treatment. (*Id.* at 430-596, 676-736, 993.) The ALJ also considered the April 2017 treatment record, which indicates that Plaintiff experienced only one bad migraine within the previous five weeks, and she was able to get relief from Maxalt. (*Id.* at 991, 1590-1615.) In addition, Dr. Qureshi's medical assessments claimed that Plaintiff experienced headaches and migraines about seven to eight times a month, but he did not provide any "objective, clinical, or diagnostic findings" to support his conclusions. (*Id.* at 882-83, 2059-60). Under the regulations, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). The ALJ's decision to give little weight to Dr. Qureshi's opinion does not assume that Plaintiff's treatment completely resolves her symptoms. Instead, the ALJ assigned the opinion "little weight" because she found that the Dr. Qureshi and the evidence do not support his opinion.

Plaintiff also argues the ALJ did not acknowledge Dr. Qureshi's 2019 assessment where he checked the box that he reviewed other medical records. (Doc. 15 at 15.) The ALJ, however, found that Dr. Qureshi's treatment records into 2018 "were too remote from the date last insured." A claimant must establish disability prior to the expiration

date of the last insured date to be entitled to benefits. 20 C.F.R. §§ 404.101, 404.130-131. Here, the period under consideration is from Plaintiff's alleged onset date of February 1, 2012, through her date last insured of December 31, 2016 (A.R. at 979). *See* 42 U.S.C. §§ 416(i)(3)(B), 423(c)(1)(B) (requiring an individual to have "not less than 20 quarters of coverage during the 40-quarter period which ends with the quarter in which such month occurred"). Therefore, the ALJ did not consider Dr. Qureshi's 2019 medical assessment in his determination because it was "too remote" from the date last insured. (A.R. 993-995.) Even still, the records from 2018 onward indicate that Plaintiff's headaches and migraines were limited to less than three a month. (*Id.* at 1673-84.)

As such, the ALJ reasonably gave Dr. Qureshi's medical assessment little weight because his own treatment notes and other medical notes are inconsistent with his opinion. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming ALJ's rejection of treating source opinion for being inconsistent with treatment notes and other evidence of record). The Court therefore finds that substantial evidence supports the ALJ's conclusion to give Dr. Qureshi's opinion little weight.

### 2. Chitra Mathew, D.N.P.

Since 2015, Plaintiff has seen DNP Matthew, a nurse practitioner at Metropolitan Neuro Behavioral Institute, for treatment of her anxiety. (A.R. at 888.) In May 2016, DNP Matthew offered a medical opinion that Plaintiff experiences moderately severe to severe mental impairments that preclude an 8-hour workday. (*Id.* at 880-81.) Under the definitions, this level of impairment means that Plaintiff would be "off task" for 16 to 20 percent of an 8-hour workday. (*Id.* at 881.) DNP Matthew did not include any explanations in her assessment but checked the box indicating that she considered and reviewed "treatment notes, records from other providers, mental status examinations, [and/or] patient's response to treatment." (*Id.*)

The ALJ assigned minimal weight to DNP Matthew's opinion reasoning that DNP Matthew's "proposed limitations were not supported by any referenced evidence and were, in fact, not supported by available treatment records from Metropolitan Neuro

Behavioral Institute." (*Id.* at 997.) Specifically, the ALJ concluded that DNP Matthew's treatment records showed that (1) Plaintiff's "compliance with medication was reportedly good," (2) Plaintiff's experienced "no side effects that were described or evident," and (3) Plaintiff's "examination results were routinely unremarkable, within normal limits, or mild." (A.R. at 997.) The ALJ cited DNP Matthew's treatment records of Plaintiff to support these conclusions. (*Id.*)

Plaintiff argues that the "ALJ failed to connect her conclusions regarding inconsistency [between DNP Matthew's opinion and the records] to any relevant specific evidence." (Doc. 15 at 16.) In other words, Plaintiff claims that the ALJ failed to provide germane reasons supported by substantial evidence. (Doc. 15 at 15; Doc. 18 at 5-6.) Under the 2017 rules, a nurse practitioner was not within the agency's definition of acceptable medical sources but considered an "other source." *Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017). To reject the opinion of an "other source," like a nurse practitioner, the ALJ must provide "germane reasons" that are supported by substantial evidence. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017).

Here, the ALJ identified germane reasons that are supported by substantial evidence in the record. As the ALJ identified, DNP Matthew's opinion did not include any explanation or detail. (*Id.* at 880-81, 997.) The ALJ therefore considered DNP Matthew's treatment notes from 2015 and 2016, which stated that "medication compliance is reportedly good, no side effects are described or evident." (*Id.* at 888, 901, 990, 997.) In addition, the ALJ identified treatment notes from February 2016 that indicated Plaintiff has "[m]ild anxiety present but not problematic" and that she "denies any major psychiatric problems or symptoms." (*Id.* at 892, 990, 997.) The ALJ also considered that in May 2016 Plaintiff experienced "severe feelings of anxiety" with "some mental status abnormalities," but she had normal speech, no cognitive difficulty, and intact memory. (*Id.* at 888-90, 990, 997.) Further, as the ALJ identified, from mid-2016 and until early 2017 Plaintiff mental status improved. (*Id.* at 992, 1884-1913.) She still had a depressed mood, but her effects to her memory, attention span, judgment, and

cognition "were either unremarkable or mild." (*Id.*) In May 2017, Plaintiff "was assessed to be cooperative, had normal speech rate, amplitude, and prosody, her mood was euthymic, she had mood congruent affect, and her thought process was goal directed and thought content had no abnormal content." (*Id.* at 992, 997, 1881.)

As such, the ALJ reasonably gave DNP Matthew's opinion minimal weight because her own treatment notes are inconsistent with her opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." (citing *Magallanes*, 881 F.2d at 751)). The Court therefore finds that substantial evidence supports the ALJ's conclusion.

### 3. Dr. Joanna Krabbenhoft

In October 2014, Dr. Krabbenhoft, a licensed psychologist, performed a psychological consultative examination of Plaintiff. (A.R. at 819.) Dr. Krabbenhoft opined that Plainitff "struggled with delayed recall" because of her anxiety. (*Id.* at 823.) Dr. Krabbenhoft, however, found no impairments with Plaintiff's concentration and persistence nor with her ability to adapt to change. (*Id.*) In her opinion, Dr. Krabbenhoft restated examination observations that Plaintiff was "[m]ildly anxious but friendly" and "[p]olite and cooperative with appropriate appearance," and Plaintiff could get along with others. (*Id.*)

Plaintiff initially claims that the ALJ "rejected" Dr. Krabbenhoft's assessment. (Doc. 15 at 16.) The ALJ, however, did not reject Dr. Krabbenhoft's opinion—she considered it and assigned it partial weight. (*Id.* at 997.) Specifically, the ALJ "accepted the observations made by Dr. Krabbenhoft from the examination and accepted the reported mental status exam scores provided." (*Id.*) The ALJ gave the opinion partial weight reasoning that Dr. Krabbenhoft "was not clear regarding vocational restrictions and just restated [Plainitff's] observations during the exam." (*Id.*) Instead, the ALJ gave greater weight to Dr. Diane Hyde's psychological consultation, which included Dr. Krabbenhoft's assessment, but also identified that Plaintiff could perform "simple,

routine, and repetitive tasks involving simple work related decisions and simple instructions and work with no public contact." (*Id.* at 996-97.)

Plaintiff also argues that the ALJ's determination that Dr. Krabbenhoft's assessment did not include vocation restrictions "does not comport with the agency's vocational expert's 2020 testimony." (Doc. 15 at 16-17.) In that hearing, the vocational expert considered a hypothetical using Dr. Krabbenhoft's assessment. (*See id.* at 1037.) The ALJ asked if the facts outlined were "clear enough in vocational terms to be able to answer." (*Id.* at 1027-38.) The expert responded, "I guess it would help, you know, to know something more about it. You know, my opinion, concerning all of those factors I heard, it would be my opinion the person would not be able to do fulltime work." (*Id.* at 1038).

Here, the ALJ provided substantial evidence to give partial weight to Dr. Krabbenhoft's opinion. The medical source statement form requests that the professional provide "substantiated medical findings about what the individual still can do despite his or her own impairment." (*Id.* at 823.) As the ALJ concluded, Dr. Krabbenhoft, however, did not provide any specific detail about the type of work Plaintiff could complete. (*Id.* at 823, 997.) The vocational expert even agreed that additional detail would help determine the vocational limitations. (*Id.* at 1038). *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Plaintiff finally argues that the ALJ incorrectly found that Plaintiff's anxiety or panic reported to Dr. Krabbenhoft was not fully "corroborated" in the record. (*Id.* at 17.) An ALJ will consider a claimant's "statements about the intensity, persistence, and limiting effects" of their symptoms, and the ALJ will also evaluate the statements "in relation to the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). In the decision, the ALJ identified instances in Plaintiff's medical history, after Dr. Krabbenhoft's evaluation, where Plaintiff denied experiencing panic attacks. (*Id.* at 889, 988, 990, 1027.) With this in mind, the ALJ reasonably concluded

that Dr. Krabbenhoft's opinion about Plaintiff's anxiety was inconsistent with the record.

As such, the ALJ reasonably gave Dr. Krabbenhoft's opinion partial weight because Dr. Krabbenhoft did not provide an assessment of Plaintiff's functional limitations and Plaintiff's medical records show inconsistences with the assessment. The Court therefore finds that substantial evidence supports the ALJ's conclusion to give Dr. Krabbenhoft's opinion partial weight.

### B. Plaintiff's Testimony

Plaintiff argues that the ALJ only connected one portion of Plaintiff's symptom testimony—how long she could sit, stand, or walk before she needed a break because of the pain—to the evidence that the ALJ believed was inconsistent. (Doc. 15 at 20.) Plaintiff argues that the ALJ failed to address with specific, clear, and convincing reasons: (1) Plaintiff's testimony about having chronic migraines and needing to lie down from the pain (*id.* at 20); (2) how "normal findings" were inconsistent with reports of chronic pain (*id.* at 21); and (3) how "passing references" to issues like effectiveness of prescribed treatment and ability to exercise invalidate Plaintiff's symptoms (*id.* at 22.).

An ALJ performs a two-step analysis to evaluate the credibility of a claimant's testimony regarding subjective pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant presents such evidence and if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. An ALJ's "vague allegation" that a claimant's symptom testimony is inconsistent with the medical record does not meet the clear and convincing standard. *Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014). Similarly, an ALJ cannot satisfy the clear and convincing standard based solely upon "a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ found that related to Plaintiff's "fibromyalgia, cervical degenerative disc disease, cervical spondylosis, hypothyroidism, and status post laparoscopic lysis of adhesions" that the medical records "did not support the [Plaintiff's] subjective allegations, such as being limited to sitting for 40 to 45 minutes at a time, standing for 30 minutes at a time, or lifting and carrying five to ten pounds." (A.R. at 994-95.) The ALJ reasoned that "there was no significant evidence to support a finding that she could not sit for more than 40 to 45 minutes at a time" and that her muscle strength results and her findings of weakness were consistent with Plaintiff's allegation of only lifting five to ten pounds. (*Id.* at 995.) The ALJ ultimately concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." (*Id.*)

As discussed, Plaintiff's treating records from Dr. Qureshi show that Plaintiff's migraines were treated effectively with nerve block injections and medication, and that she experienced less than three a month. (*Id.* at 995, 2059-60). This conflicts with Plaintiff's testimony that these migraines limit her to siting for 40 to 45 minutes at a time. (*Id.* at 984, 995). As for the references to effective medication treatment, the ALJ properly referenced Plaintiff's testimony that her pain killers were doing a "better job of keeping her pain under control." (*Id.* at 680, 987.) "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ did not rely only on normal objective findings to reject the Plaintiff's allegations. The ALJ acknowledge that Plaintiff experienced pain in her entire body, used a wheelchair "on and off," and that she reported napping throughout the day for 30

minutes to two hours at a time. (*Id.* at 984.) The ALJ considered that Plaintiff went to physical therapy to address her pain complaints, and that she reported that she was "making great progress." (*Id.* at 551, 985.) In addition, the ALJ considered reports of Plaintiff's daily activities, such as personal care, helping care for her daughter, managing medications, preparing simple meals, driving, and going out alone, among other things (*Id.* at 238-45, 820, 998). *See* 20 C.F.R. §404.1529(c)(3)(i) (listing daily activities as a factor relevant for consideration when assessing symptoms). As such, the ALJ properly concluded that the severity of Plaintiff's allegations was not fully supported by her daily activities. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (holding ALJ properly supported rejecting claimant's complaints when relying on the record showing "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping manage finances").

Here, the ALJ identified reasons to discount Plaintiff's subjective complaints, including the lack of supporting objective medical evidence and evidence of effective treatment and ability to perform activities of daily living. The Court therefore finds that the ALJ conclusion is supported by substantial evidence. *See Tommasetti*, 533 F.3d at 1039 ("If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." (citation omitted)).

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the March 20, 2020 decision by the Administrative Law Judge and the Commissioner of the Social Security Administration (A.R. at 975-1000).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 31st day of October, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge